Khatereh S. Fahimi, Bar No. 252152
sfahimi@littler.com
Noah J. Woods, Bar No. 264823
nwoods@littler.com
Christopher A. Moore, Bar No. 342089
camoore@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  619.232.0441
Facsimile:  619.232.4302

Attorneys for Defendant
LUXOTTICA OF AMERICA INC. d/b/a
LENSCRAFTERS (formerly Luxottica
Retail North America)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASSION GABOUREL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LUXOTTICA OF AMERICA INC. d/b/a LENSCRAFTERS, an Ohio corporation; LUXOTTICA RETAIL NORTH AMERICA, INC., a business entity of unknown form; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-00471-FWS-MAAx<br><br>**DEFENDANT LUXOTTICA OF AMERICA INC. D/B/A LENSCRAFTERS' OBJECTIONS TO AND MOTION TO STRIKE PLAINTIFF'S TRIAL PLAN**<br><br>Hearing Date:  January 8, 2026<br>Time:  10:00 a.m.<br>Courtroom:  10D<br><br>Trial Date:  February 24, 2026<br>Complaint Filed:  November 23, 2021 |

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ..................................................................7

II.     PROCEDURAL BACKGROUND..........................................8

III.    THE COURT HAS THE AUTHORITY TO LIMIT THE PRESENTATION OF EVIDENCE TO ENSURE A PAGA ACTION CAN BE EFFICIENTLY TRIED..........................................................10

IV.     PLAINTIFF RELIES HEAVILY ON THE PRESUMPTION IN DONOHUE, BUT SHE PROVIDES NO PLAN FOR LUXOTTICA'S REBUTTAL OF THE PRESUMPTION OR FOR DEMONSTRATING LIABILITY AFTER THE PRESUMPTION IS REBUTTED, AN INQUIRY THAT WILL REQUIRE HUNDREDS OF MINI TRIALS BECAUSE EMPLOYEES DID TAKE MEALS....11

V.      PLAINTIFF'S THEORY OF LIABILITY FOR MEAL BREAK VIOLATIONS RELIES ON INDIVIDUAL INQUIRIES, AND THE TRIAL PLAN PROVIDES FOR NO MANAGEABLE WAY OF TRYING THEM. ..................................................................13

        A.      Plaintiff Misstates Luxottica's Meal Policies and Practices, Which Comply With California Law. ..........................................13

        B.      Plaintiff Provides No Representative Way of Establishing That Individual Managers Prevented Meal Breaks..............................15

        C.      Plaintiff Provides No Representative Way to Distinguish Between Involuntarily Missed Meal Periods and Lawfully Waived Meal Periods........................................................16

VII.    PLAINTIFF'S PROPOSED WITNESSES ONLY HIGHLIGHT THE INDIVIDUALIZED ISSUES UNDERLYING PLAINTIFF'S THEORY OF LIABILITY. ..................................................18

VIII.   THE COURT HAS ALREADY HELD THAT PLAINTIFF MISSED THE DEADLINE TO ORDER MORE DISCOVERY..........................19

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**(CONTINUED)**

**PAGE**

IX.    BECAUSE   PLAINTIFF   MISSED   THE   DEADLINE   TO DESIGNATE AN EXPERT FOR TRIAL, SHE HAS NO WAY TO EXTRAPOLATE TIME RECORDS IN A WAY THAT IS FAIR TO LUXOTTICA. .......................................................................................21

XI.    CONCLUSION ........................................................................................23

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5

*Cole v. CRST, Inc.*,
317 F.R.D. 141 (C.D. Cal. Apr. 1, 2016) ..................................................16

6

7

*Corral v. Staples the Off. Superstore LLC*,
2023 WL 2347445 (C.D. Cal. Feb. 6, 2023) ...........................................12

8

9

*Delmar Schmidtberger, v. W. Ref. Retail, LLC*,
2021 WL 5024714 (C.D. Cal. Sept. 28, 2021) .......................................15

10

11

*Gonzalez v. HUB Int'l Ltd.*,
2021 WL 3261634 (C.D. Cal. May 25, 2021) ........................................12

12

13

*Hale v. Brinker Int'l, Inc.*,
765 F. Supp. 3d 904 (N.D. Cal. 2025) ....................................................13

14

15

*Hamilton v. Wal-Mart Stores, Inc.*,
39 F.4th 575 (9th Cir. 2022) ...................................................................10

16

17

*Kimoto v. McDonald's Corps.*,
2008 WL 4690536 (C.D. Cal. Aug. 19, 2008) ......................................16

18

*Kuhns v. City of Allentown*,
2010 WL 4236873 (E.D. Pa. Oct. 26, 2010) .........................................21

19

20

*McCarty v. SMG Holdings, I, LLC*,
2022 WL 913092 (N.D. Cal. Mar. 29, 2022) ........................................13

21

22

*Roth v. CHA Hollywood Med. Ctr.*,
2013 WL 5775129 (C.D. Cal. Oct. 25, 2013) .......................................16

23

24

*Vega v. Delaware North Companies, Inc.*,
2023 WL 6940198 (E.D. Cal. Oct. 20, 2023).........................................12

25

26

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................10, 18, 22

27

*Watson v. City of Henderson*,
2024 WL 1514983 (D. Nev. Apr. 5, 2024).............................................21

28

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

# TABLE OF AUTHORITIES

## (CONTINUED)

Page(s)

**California Cases**

*Brinker Restaurant Corp. v. Superior Court*,
    53 Cal.4th 1004 (2012) ...........................................................................11

*Carrington v. Starbucks Corp.*,
    30 Cal.App.5th 504 (2018) ..................................................................22

*Donohue v. AMN Services, LLC*,
    11 Cal. 5th 58 (2021) .....................................................................*passim*

*Duran v. U.S. Bank Nat'l Ass'n*,
    59 Cal. 4th 1 (2014) ...........................................................10, 18, 22

*Esparza v. Safeway Inc.*,
    36 Cal. App 5th 42 (2019) .................................................................13, 14

*Estrada v. Royalty Carpet Mills, Inc.*,
    15 Cal. 5th 582 (2024) .........................................................................10

*Lampe v. Queen of the Valley Medical Center*,
    19 Cal.App.5th 832 (2018) .................................................................12

*Naranjo v. Spectrum Sec. Servs., Inc.*,
    15 Cal.5th 1056 (2024) .......................................................................22

*Thurman v. Bayshore Transit Mgmt.*,
    203 Cal.App.4th 1112 (2012) ............................................................22

**California Statutes**

California's Private Attorneys' General Act ....................................*passim*

Cal. Lab. Code
    § 512(a) .........................................................................................16
    § 2699(i) .........................................................................................23

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

# TABLE OF AUTHORITIES

## (CONTINUED)

**Page(s)**

**Other Authorities**

Fed. R. Civ. Proc. 23 ................................................................................8

Fed. R. Civ. Proc. 26(a)(3)......................................................................10

Fed. R. Civ. Proc. 26(e) ......................................................................20, 21

Fed. R. Civ. Proc. 26(e)(1)......................................................................20

Fed. R. Civ. Proc. 26(e)(1)(A)-(B)..........................................................20

Fed. R. Civ. Proc. 30(b)(6) ......................................................................19

Fed. R. Civ. Proc. 37(c)(1).......................................................................21

L.R.11-6.1. ................................................................................................23

# I.    INTRODUCTION

As the Court's October 31, 2025 Order compelling Plaintiff Passion Gabourel to produce a trial plan reflects, a trial plan is especially crucial in a California's Private Attorneys' General Act ("PAGA") action to chart a fair and efficient course for the plaintiff to prove PAGA violations for hundreds of employees, especially where individualized issues made class certification impossible. Here, Plaintiff's proposed plan states that she will limit trial of her PAGA claims to Defendant Luxottica of America Inc. d.b.a. LensCrafters' ("Luxottica") alleged meal period violations, but her more limited focus does not make her arguments more compelling. Plaintiff notably glosses over the inherently individualized issues that consistently prevent representative treatment of meal period claims. In fact, Plaintiff rehashes the same arguments she has made at least twice before, including those that caused this Court to order the trial plan in the first place.

As she did in her motion for class certification, Plaintiff relies almost exclusively on the rebuttable presumption stated in *Donohue v. AMN Services, LLC,* 11 Cal. 5th 58 (2021). However, as repeatedly explained by Luxottica (and ignored by Plaintiff), Luxottica easily rebuts the *Donohue* presumption with its evidence of (1) compliant policies, (2) alleged aggrieved employee testimony—including from Plaintiff, (3) lawfully waived meal periods, (4) paid premiums, and (5) attestations. *Donohue* did not change settled law that an employer is only required to provide meal periods, not police them. Thus, determining liability requires inquiry into ***why*** a meal period was missed, late, or interrupted, and Plaintiff's trial plan provides no method for doing that, much less on a representative basis. Plaintiff suggests she will rely on testimony from Gabriel Anello, who submitted an expert declaration in support of her failed class certification motion. But Mr. Anello cannot testify to the reason why a meal period was noncompliant, and in any event, Plaintiff missed the deadline to designate an expert. Mr. Anello will not be able to opine regarding the data, and Plaintiff does not identify anyone else who could do so either.

Relatedly, Plaintiff also tries to get around the Court's ruling that she may not reopen discovery by arguing that Luxottica has a duty to supplement its discovery responses. This

1  is wrong, and with no expert, Plaintiff provides no way of explaining how she can possibly

2  extrapolate data in a way that is fair to Luxottica.

3      Finally, in the face of her theories of liability that rely on individual issues, Plaintiff

4  provides no way for Luxottica to present its affirmative defenses consistent with due

5  process.

6      Because Plaintiff has failed to produce a trial plan that demonstrates that her PAGA

7  claim can be effectively tried and in accordance with Luxottica's due process rights,

8  Luxottica requests that Plaintiff's trial plan be stricken along with her PAGA claim, or

9  Plaintiff be limited to presenting evidence regarding PAGA penalties based on her own

10  individual Labor Code violations.

11  ## II.    PROCEDURAL BACKGROUND

12      On November 23, 2021, Plaintiff initiated this class and PAGA lawsuit in Los

13  Angeles Superior Court, which Luxottica removed to this Court. Dkt. No. 1-1 ("Compl.").

14  Plaintiff alleged a kitchen-sink of wage and hour violations, including the failure to provide

15  meal periods. She brought class claims on behalf of a putative class, and she also sought

16  PAGA penalties based on the same alleged Labor Code violations on behalf of a cohort of

17  alleged aggrieved employees. Compl. ¶ 50.

18      The Court denied Plaintiff's motion for class certification on August 26, 2025,

19  finding that though Plaintiff is not subject to an arbitration agreement, she sought to

20  represent a Rule 23 class that was largely comprised of putative class members bound by

21  arbitration agreements. Dkt. 111 at p. 4. The Court concluded that Plaintiff was not an

22  adequate class representative, and her claims were not typical. *Id.* at p. 5.

23      Though the fact that Plaintiff could not meet the requirements of adequacy and

24  typicality was dispositive in the Court's ruling, the briefing on class certification also

25  revealed that Plaintiff's theories of liability require individual inquiries for each alleged

26  violation. That is, Plaintiff did not credibly argue that Luxottica's policies are unlawful.

27  Instead, she pointed to, at most, isolated scenarios that would result in numerous mini-trials

28  to demonstrate liability. *See, e.g.,* Dkt. 107 at pp. 10:7-12:27 Employees work a myriad of

job duties in over 160 different LensCrafters stores with different managers, schedules, and layouts. Dkt. 108-2 (Brefol Decl.) ¶4. This was particularly problematic in the context of Plaintiff's alleged theory of meal period violations. Plaintiff alleges that insufficient staffing and individual managers prevented her and other employees from taking timely meal and rest breaks, Dkt. 100-1 at pp. 8:23-9:8, but whether any employee in a particular store or in a particular position was required to take late meals or skip rest breaks due to the demands of work versus personal choice requires highly individualized inquiries.

Given the highly individualized evidence needed to even establish liability, it was not surprising that Plaintiff did not present any trial plan or representative evidence in support of certification. *E.g.*, Dkt. 109 at 18:15-19:5 (relying on expert declarations and *Donohue* to argue claims could be manageably tried). She supported her motion with two "expert" declarations, neither of which addressed the individualized issues or explained how liability could be established with representative evidence. *See* Dkt. 99-3, 99-4. Moreover, Plaintiff did not designate either of these witnesses—*or any other expert*—as testifying experts for trial, and she also let the discovery deadline pass without propounding any other discovery that might be directly relevant and specific to her PAGA claims. Fahimi Decl. ¶ 2; *see also* Dkt. 127 at pp. 7, 9, Because Luxottica had no clue how Plaintiff planned to try her PAGA claims on a manageable basis while still allowing Luxottica to present its affirmative defenses, Luxottica moved the Court to compel Plaintiff to produce a proposed trial plan. Dkt. 117. The Court granted the motion and ordered Plaintiff to file a trial plan that addressed the following issues:

1. The specific PAGA claims, and the theories underlying those claims, that Plaintiff intends to prove at trial;

2. The number of employees Plaintiff plans to prove are aggrieved under PAGA;

3. The total number of PAGA violations Plaintiff plans to prove, including whether she will seek to "stack" penalties and seek more than one PAGA penalty per aggrieved employee per pay period;

4. The total amount of penalties Plaintiff seeks;

5. The evidence Plaintiff plans to use to prove her case, including any

statistical and representative evidence and witnesses and the topics on which each will testify;

6.  An estimate of how many hours Plaintiff anticipates her presentation of evidence will take;

7.  Pretrial disclosures delineated in Federal Rule of Civil Procedure 26(a)(3);

8.  How Luxottica can present its defenses consistent with its due process rights; and

9.  The proposed method of adjudicating each of Plaintiff's claims and the theories on which the claims are based.

Dkt. 127 at pp. 10-11. Plaintiff's proposed trial plan fails to meaningfully explain how her PAGA claims can be manageably tried consistent with Luxottica's due process rights.

## III.  THE COURT HAS THE AUTHORITY TO LIMIT THE PRESENTATION OF EVIDENCE TO ENSURE A PAGA ACTION CAN BE EFFICIENTLY TRIED.

The Ninth Circuit has confirmed that district courts have the authority to manage PAGA claims. *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 587 (9th Cir. 2022) (acknowledging that district courts have the inherent authority to manage PAGA claims). This authority is consistent with California law. While the California Supreme Court has held that courts cannot strike PAGA claims based on manageability, that court left open the ability for courts to strike PAGA claims based on due process concerns. *Estrada v. Royalty Carpet Mills, Inc.*, 15 Cal. 5th 582, 617-18 (2024). Luxottica has a due process right to present its defenses, including as to individual employees if that is what Plaintiff's theories of liability require. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366 (2011); *see also Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 29 (2014); *Estrada*, 15 Cal.5th at 618. The California Supreme Court also permits trial courts to "limit the scope of the PAGA claim" and "limit … evidence when determining the number of violations that occurred and the amount of penalties to assess." *Estrada*, 15 Cal.5th at 619 (citations omitted); *see also* Dkt. 127 at pp. 9-10.

/ / /

/ / /

/ / /

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STRIKE

**IV.    PLAINTIFF RELIES HEAVILY ON THE PRESUMPTION IN DONOHUE, BUT SHE PROVIDES NO PLAN FOR LUXOTTICA'S REBUTTAL OF THE PRESUMPTION OR FOR DEMONSTRATING LIABILITY AFTER THE PRESUMPTION IS REBUTTED, AN INQUIRY THAT WILL REQUIRE HUNDREDS OF MINI TRIALS BECAUSE EMPLOYEES DID TAKE MEALS.**

Rather than a mere rebuttable presumption, Plaintiff suggests that time records alone will establish Luxottica's liability under *Donohue v. AMN Services, LLC,* 11 Cal. 5th 58 (2021), but as Luxottica explained in its opposition to class certification and in its motion to compel a trial plan, Plaintiff will not be able to rely on the presumption in *Donohue* to demonstrate liability on a representative basis. In *Donohue*, in the context of a timekeeping system that rounded meal punches, making them unreliable for determining when meal periods started and how long they lasted, the California Supreme Court held that time records showing noncompliant meals gives rise to a rebuttable presumption of liability. *Id.* at 62-63, 75-78. *Donohue* minimized the offensive use of this presumption: "The rebuttable presumption does not require employers to police meal periods. Instead, it requires employers to give employees a mechanism for recording their meal periods and to ensure that employees use the mechanism properly." *Id.* at 77. The Supreme Court also reaffirmed *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012), holding that an employer is obligated to "provide" an "opportunity" for meal periods, not to ensure they are taken. *Donohue,* 11 Cal. 5th at 78. For example, there is no liability "if the employee chooses to take a short or delayed meal period or no meal period at all" or "if an employee voluntarily chooses to work during a meal period after the employer has relieved the employee of all duty." *Id.* at 67.

*Donohue* more prominently highlighted the importance that "time records showing missed, short, or delayed meal periods" do not "create 'automatic liability' for employers" and employers are entitled to rebut a facially noncompliant break with evidence that employees had the opportunity to take meal breaks. *Id. Donohue* also approved of the employer's use of a system to report and obtain premiums so long as it does not round time punches. *Id.* at 78.

Here, as discussed below, there is no non-compliant policy reflected in the time records to be rebutted, as there is no rounding, and employees lawfully waived their meals, took their meals, or were paid a premium. There is no reason for a rebuttable presumption to apply, but if it did, the presumption is rebutted. *See, e.g., Corral v. Staples the Off. Superstore LLC*, 2023 WL 2347445, at *12 (C.D. Cal. Feb. 6, 2023) (a requirement that employees complete an attestation at the end of their shift that they were provided the chance to take a compliant break "is reliable evidence to rebut the [*Donohue*] presumption in virtually every instance"); *Gonzalez v. HUB Int'l Ltd.*, 2021 WL 3261634, at *5 (C.D. Cal. May 25, 2021) (testimony that employer did not interfere with meal periods was sufficient to overcome any presumption of meal period violations from the time records).

Even if the presumption is not rebutted, Plaintiff's trial plan holds no space for Luxottica to present evidence to rebut Plaintiff's use of time records at trial, as required by *Donohue*. In the face of Luxottica's lawfully compliant meal policies, a time record could reflect a noncompliant meal for many reasons. It might mean that a meal period was voluntarily waived between the fifth and sixth hour, or that a meal period was purposefully skipped or taken late due to employee preference. Because the policies, practices, and data do not reflect these reasons, Luxottica is entitled to present testimony against each alleged violation, requiring potentially thousands of individualized inquiries for the hundreds of alleged aggrieved employees. It is for this reason that meal period claims are nearly uncertifiable in the class action context. *E.g., Vega v. Delaware North Companies, Inc.*, 2023 WL 6940198, at *18-19 (E.D. Cal. Oct. 20, 2023) ("instances where time records show a non-compliant meal period would require individualized inquiries" including "why" the employee did not take the meal period); *Lampe v. Queen of the Valley Medical Center*, 19 Cal.App.5th 832, 850 (2018) (denying certification even where time records demonstrated only 11.1% compliance rate because inquiry into why the meal was late "would require an individualized determination and review of individual employee files and pay stubs.").

/ / /

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

Plaintiff ignores these nuances, but *Donohue* does not provide for skipping these individualized inquiries. Whether on rebuttal or as part of Plaintiff's burden to establish liability, Plaintiff's claim for meal period violations requires individual inquiries that cannot be resolved in a representative manner. *See Hale v. Brinker Int'l, Inc.*, 765 F. Supp. 3d 904, 913 (N.D. Cal. 2025) (*Donohue* presumption alone is not sufficient to support class certification); *McCarty v. SMG Holdings, I, LLC,* 2022 WL 913092, at *6 (N.D. Cal. Mar. 29, 2022) (despite *Donohue* presumption, managers' varying meal period practices precluded the "predominance" necessary for class certification despite "time records showing noncompliant meal periods"); *see also Esparza v. Safeway Inc.*, 36 Cal. App 5th 42, 49 (2019) (it is not permissible to seek "premium wages for every short, missed. or late meal period reflected in [an employer's] time punch data" without inquiring into "the reason each period was short, missed, or late").

## V. PLAINTIFF'S THEORY OF LIABILITY FOR MEAL BREAK VIOLATIONS RELIES ON INDIVIDUAL INQUIRIES, AND THE TRIAL PLAN PROVIDES FOR NO MANAGEABLE WAY OF TRYING THEM.

In addition to her heavy reliance on *Donohue*, Plaintiff puts forth two theories to explain alleged meal break violation:

1. Defendant maintains common . . . policies which deprived employees of lawful meal breaks; and

2. Supervisors frequently failed to permit employees to take compliant meal breaks.

As further explained below, not only does Plaintiff fail to present evidence that Luxottica has unlawful meal policies and practices or that there is any representative way to establish individual managers prevented meal breaks, Plaintiff provides no representative way to distinguish between involuntarily missed meal periods and lawfully waived meal periods.

### A. Plaintiff Misstates Luxottica's Meal Policies and Practices, Which Comply With California Law.

Luxottica had an employee handbook in 2015 that was revised in 2018 and 2023.

The wage and hour policies, which have not substantively changed during this period, have complied with California law at all times. Abbinante Depo. 99:2, 19-22, Ex. 3 at p. 23. Luxottica has lawful break policies that provide the opportunity to take all requisite timely, off-duty breaks. *Id.* at p. 50; *see also id.* 223:13-224:12, Ex. 8. The Employee Guide explicitly states "[e]mployees must be completely relieved of all work and allowed to leave their work location during meal periods and rest breaks." *Id.* at Ex. 3. Its internal policies emphasize that "Luxottica complies with [California] laws, and expects its California managers to manage and enforce compliance." *Id.* at Ex. 8.

Employees are trained regarding their rights to take breaks, and the Handbook is distributed during new hire orientation and accessible to employees on Luxottica' intranet.[1] These policies are also provided to all California employees,[2] and the California Wage Order is posted at each retail location.[3]

Employees are required to confirm the accuracy of their reported time each week. Dkt. 107-4 (Abbinante Depo.) 152:3-154:15, Ex. 7. Also, every day, when clocking out, employees were asked if they were provided the opportunity to take a meal period and had to click either "Yes" or "No." If an employee answered "No," this automatically triggered a premium.[4] Dkt. 107-16 (Abbinante Decl.) ¶ 3, Ex A. In some stores, employees also submitted a handwritten form. Dkt. 107-4 (Abbinante Depo.) 240:10-241:21, Ex. 10.

---

[1] Dkt. 107-4 (Abbinante Depo.) 99:2, 13-22, Ex. 3.

[2] Each non-exempt employee, including Plaintiff, signed documents certifying that they received these policies. Dkt. 107-4 (Abbinante Depo.) 99:2, 19-22; 101:7-103:9, 124:6-17 Exs. 3, 5.

[3] *E.g.*, Dkt. 107-20 (Castenada Decl.) at ¶3; Dkt. 107-11 (Vargas Depo.) at 26:17-27:2.

[4] *E.g.,* Dkt. 107-31 (Carmona Decl.) ¶12; Dkt. 107-24 (Harnett Decl.) ¶12; Dkt. 107-25 (Mandujano Decl.) ¶12; Dkt. 107-28 (Peheau Decl.) ¶12; Dkt. 107-30 (Quintero Decl.) ¶14; Dkt. 107-21 (Sanchez Decl.) ¶13; Dkt. 107-29 (Trujillo Decl.) ¶17; Dkt. 107-22 (Smith Decl.) ¶15.

1    In addition to disregarding the forgoing facts in an effort to advance an unworkable
2    trial plan, Plaintiff also misrepresents the context of Luxottica's policies. For example,
3    Plaintiff argues that the policies "recognize" employees "may be prevented from taking
4    compliant meal breaks due to 'business needs.'" A review of the policy demonstrates that
5    the language Plaintiff cites does not authorize managers to deny breaks; it is guidance
6    explaining when a premium is owed. Dkt. 128-2 at p. 16. The policy reiterates that
7    employees must be provided breaks in accordance with the law, and if an employee is not
8    provided a required break, the company owes a premium. *Id.* at pp 15-16. Far from
9    authorizing noncompliance, the policy underscores that a failure to provide breaks must be
10   remedied through premium pay.

11   **B.    Plaintiff Provides No Representative Way of Establishing That**
12   **Individual Managers Prevented Meal Breaks.**

13   Relying on declarations filed in support of class certification, Plaintiff repeats the
14   narrative she urged in support of that motion that managers systemically failed to provide
15   breaks, but that theory is contradicted by Luxottica's policies and not supported by any
16   representative evidence. While Plaintiff's one-sided declarations in support of certification
17   referred to a few potentially problematic managers, the deposition of theses witnesses and
18   Luxottica's declarations reveal that managers are largely diligent in ensuring timely and
19   compliant breaks, both as scheduled and upon employee request.[5] ***Every*** manager
20   deposed—including Plaintiff herself—testified that they never denied breaks. *Id.* This was
21   not a compelling argument in support of certification, and it is no more compelling repeated
22   as part of her trial plan.

23   Furthermore, at many stores, the assistant managers or shift managers are
24   responsible for providing meal and rest breaks to their department, meaning that the
25   practices will vary by store and supervisor. *See, e.g., Delmar Schmidtberger, v. W. Ref.*

---

26   [5] *E.g.,* Dkt. 107-7 (Gabourel Depo.) 129:20-130:10; Dkt. 107-8 (Nsubuga Depo.) 42:7-9
27   Dkt. 107-30 (Quintero Decl.) ¶13; Dkt. 107-21 (Sanchez Decl.) ¶12; Dkt. 107-29 (Trujillo
28   Decl.) ¶14., Dkt. 107-17 (Crandall Decl.) ¶ 61-62, 66.

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

*Retail, LLC*, 2021 WL 5024714, at *19 (C.D. Cal. Sept. 28, 2021) (individual issues predominated regarding the different store locations and the practicality of requiring defendant to provide off-duty meals); *Cole v. CRST, Inc.*, 317 F.R.D. 141, 145-46 (C.D. Cal. Apr. 1, 2016) ("[B]ecause there is evidence in the record of [employees] taking meal and rest breaks without interference from Defendant, individualized inquiries predominate."); *Kimoto v. McDonald's Corps.*, 2008 WL 4690536, at *6-7 (C.D. Cal. Aug. 19, 2008) (denying certification due to divergent break practices applied for particular managers, shifts, and employees). This is particularly true for allegations of interrupted breaks because "[t]here is no way to determine 'in one stroke' whether a particular break for a particular putative class member was interrupted and to what degree." *Roth v. CHA Hollywood Med. Ctr.*, 2013 WL 5775129, at *8 (C.D. Cal. Oct. 25, 2013). Finally, though they had the opportunity to do so, some alleged aggrieved employees chose not to take a break.[6] Despite what the time records may show, this is not a violation.

### C. Plaintiff Provides No Representative Way to Distinguish Between Involuntarily Missed Meal Periods and Lawfully Waived Meal Periods.

For shifts between five and six hours, employees can lawfully waive their meal period. Lab. Code § 512(a). Despite this, Plaintiff assumes when employees waived their meal break, it was non-compliant. *See* Dkt. 128-4 ("Anello Decl.") ¶¶ 5–9 (considering any "facial meal period violation" for shifts over 5 hours long or 10 hours long without any discussion of lawful waiver). Indeed, employees confirmed that they were offered a meal break for the shifts Plaintiff claims were non-compliant, but they chose to work instead.[7]

---

[6] Dkt. 107-19 (Perez Decl.) ¶ 16 ("If the floor is busy and someone needs take a meal break, and they are approaching the 5th hour I will send them regardless of how busy it is. However, there have been times when employees need to go on break and get stuck with a customer. On those occasions, if I am the floor leader, I will offer to relieve them so they can go on break. Sometimes the employee will stay and continue working with the customer, sometimes they will not. It is always their choice. When I get stuck with a customer, I have had other employees offer to relieve me, while I have taken them up on the offer sometimes, other times I have chosen not to because either I felt I was almost done and it didn't make sense for me to hand off the customer or the customer had a very complicated transaction and I thought it made more sense for me to stay with the customer. In any event whether I handed off the customer or stayed with the customer, was my choice.").

[7] Dkt. 107-31 (Carmona Decl.) ¶ 9; Dkt. 107-27 (Esguerra Decl.) ¶ 10; Dkt. 107-24 (Harnett

1  This is particularly significant here since, as Luxottica demonstrated in opposition to class
2  certification but ignored by Plaintiff here, the time records reflect that over half of the shifts
3  that reflect missing meal periods occurred during shifts that lasted between 5 and 6 hours.
4  Dkt. 107-17 (Crandall Decl.) ¶¶ 21-22, 37.

5      Thus, Plaintiff points to no representative way of establishing Luxottica's liability
6  for meal period violations.

7  **VI.    PLAINTIFF'S TRIAL PLAN RELIES ON INDIVIDUAL ISSUES, BUT IT
         FAILS TO PROVIDE FOR LUXOTTICA TO PRESENT ITS
8        AFFIRMATIVE DEFENSES IN ACCORDANCE WITH DUE PROCESS.**

9      Plaintiff offers a truncated list of what she contends are the "only" defenses to the
10 alleged meal-period violation, but this cursory summary is both inaccurate and unhelpful.
11 To begin, it is unclear how Plaintiff identified these defenses as the exclusive ones at
12 issue—or even as the actual defenses in dispute. Setting that aside, her arguments do not
13 address how Defendant could present its defenses on a representative basis. For example,
14 with respect to the payment of premiums, Plaintiff simply asserts that such evidence should
15 not be permitted as a defense, but she never explains how, if permitted, this defense could
16 be evaluated or managed on a representative basis.

17     Plaintiff's treatment of the "employee choice" defense is similarly contradictory.
18 She asserts that representative evidence could be presented through Defendant's attestation
19 records, yet simultaneously argues that those same records are unreliable and should not
20 be used. As a result, it remains entirely unclear what Plaintiff's proposed plan would be for
21 addressing the employee-choice defense at trial.

22     Finally, as to waiver, Plaintiff offers only the conclusory statement that Defendant
23 "can present evidence of any mutual agreement to waive a meal break" for shifts between
24 five and six hours or ten and twelve hours. She does not explain what such evidence would

25
26 Decl.) ¶9; Dkt. 107-11 (Mandujano Decl.) ¶ 9; Dkt. 107-28 (Pehau Decl.) ¶10. Dkt. 107-
   22 (Smith Decl.) ¶12 Dkt. 107-30 (Quintero Decl.) ¶11; Dkt. 107-21 (Sanchez Decl.) ¶10;
27 Dkt. 107-29 (Trujillo Decl.) ¶12; Dkt. 107-19 (Perez Decl.) ¶13. Dkt. 107-12 (Watson
   Depo.) 29:25-30:1.
28

1  consist of, how it would be presented, or how it could be evaluated on a representative

2  basis.

3      At bottom, the trial plan provides no way for Luxottica to present its defenses in a

4  manageable way.  Instead, Plaintiff argues that Luxottica "does not have a due process

5  right to call each of the aggrieved employees." Dkt. 128 at p. 16:21-22. This misses the

6  point. Plaintiff must produce a trial plan that manages the individual issues so that

7  Luxottica **can** prove its affirmative defenses as to each claim. *Duran*, 59 Cal.4th at 32; *see*

8  *Dukes*, 564 U.S. at 366 (holding that employers have due process rights "to individualized

9  determinations" as to each employee's entitlement to relief); *Duran*, 59 Cal.4th at 29

10  (holding that employers defending against representative evidence must be allowed "an

11  opportunity to contest each individual claim on any ground not resolved in the trial of

12  common issues" [citation omitted]).

13      Plaintiff's statement that Luxottica "can attempt to rebut the presumption that it

14  failed to provide meal breaks at trial using representative evidence" is wholly insufficient.

15  Plaintiff must ensure her claims can be tried while preserving Luxottica's rights, not

16  Luxottica. While representative evidence might work in some cases, Plaintiff's theory of

17  liability relies on individual determinations by individual employees and managers, and

18  she has provided no way for Luxottica to respond to that in anyway other than on a

19  employee-by-employee and shift-by-shift basis.

20  **VII.  PLAINTIFF'S PROPOSED WITNESSES ONLY HIGHLIGHT THE**

21  **INDIVIDUALIZED ISSUES UNDERLYING PLAINTIFF'S THEORY OF LIABILITY.**

22      Plaintiff's witnesses do not provide any way to manageably try Plaintiff's claims

23  either. Plaintiff states that she will call herself and five other witnesses. She plans to call

24  Gabriel Anello, who previously submitted a purported expert declaration in support of her

25  motion for class certification, but as discussed further below, Plaintiff has not designated

26  Mr. Anello or any other expert for trial. Plaintiff states this does not matter because Mr.

27  Anello will only be testifying as a "lay witness" as to his "mathematical calculations." Dkt.

28  128 at 8:16-21. But Mr. Anello's declaration, which states that he was "asked to tabulate

1  various data points" and attaches his CV and details his experience, including supervising

2  "a client-facing data analysis team specializing in labor and employment matters" and

3  calculating "wage and hour damages in both state and federal cases," Anello Decl. ¶ 2, Ex.

4  A, does not lay the foundation for him to testify as a percipient witness. Moreover, Plaintiff

5  also provides no exception for the multiple layers of hearsay on which his testimony relies.

6  And even if Mr. Anello were a competent witness to testify as to what the data says, as

7  explained above, time records do not reveal why a meal period was missed or late, so any

8  such testimony has nothing to do with Luxottica's liability for meal period violations.

9      Plaintiff also names Kristen Abbinante, Luxottica's Rule 30(b)(6) witness, but she

10  will merely testify regarding Luxottica's meal policies and practices. Dkt. 128 at 9:22-10:2.

11  Plaintiff's final four witnesses—herself and three alleged aggrieved employees—will

12  apparently discuss their own individual experiences with Luxottica's policies and

13  practices. *Id.* at 10:3-27. Three of these witnesses, Plaintiff, James Ozment, and Brooke

14  Watson, submitted declarations in support of Plaintiff's motion for class certification

15  stating that they were not provided meal periods. This individual testimony, even if it is

16  contrary to Luxottica's policies and practices, does nothing to demonstrate that meal period

17  violations can be proved on a representative basis.

18  **VIII. THE COURT HAS ALREADY HELD THAT PLAINTIFF MISSED THE
19      DEADLINE TO ORDER MORE DISCOVERY.**

20      The Court firmly rejected Plaintiff's efforts to reopen discovery in order to cure her

21  failure to obtain time and payroll records for alleged aggrieved employees during the

22  PAGA period. Dkt. 127 at p. 7 ("And the court finds Plaintiff has not made an adequate

23  demonstration that Plaintiff was diligent in obtaining discovery during the discovery

24  periods provided to justify reopening discovery at this late date.") (citing *Johnson*, 975 F.

25  2d at 610); *see also id.* at p. 9.

26      Plaintiff rehashes her alternative argument made in opposition to the motion to

27  compel a trial plan that Luxottica should be required "to supplement its production of time

28  records through the time of trial, because the duty to supplement discovery responses

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STRIKE

1    continues even after the discovery period has closed." Dkt. 128 at 4:25-28. First, this is not

2    the right procedural mechanism to seek to compel Luxottica to produce discovery. Second,

3    Luxottica has no duty to supplement a document production with documents that did not

4    exist at the time of the original request.

5        Federal Rule of Civil Procedure 26(e)(1) provides that a party who has made a

6    disclosure or responded to discovery "must supplement or correct its disclosure or

7    response:

8        (A) in a timely manner if the party learns that in some
9            material respect the disclosure or response ***is
             incomplete or incorrect***, and if the additional or
10           corrective information has not otherwise been made
             known to the other parties during the discovery
11           process or in writing; or

12       (B) as ordered by the court.

13   Fed. R. Civ. P. 26(e)(1)(A)-(B) (emphasis added). Plaintiff has not pointed to any

14   disclosure or response that was incomplete or incorrect *at the time it was made* or Court

15   Order that Luxottica failed to comply with. This is particularly true here where the parties

16   extensively met and conferred over the appliable scope of discovery.

17       Plaintiff cites no authority suggesting that discovery responses that were complete

18   and accurate when made must nonetheless be supplemented. If responsive documents do

19   not exist at the time of the response, that response is, by definition, complete and accurate

20   when made. This distinction appears to be lost on Plaintiff, but not on the courts:

21       However, courts have found that the duty to supplement is only
         triggered if a party's prior production is incorrect or incomplete.
22       "The duty to supplement under Rule 26(e)(1) is directed to
         documents generated during the relevant time frame previously
23       not produced but subsequently discovered. To say that the duty
         to supplement covers documents generated after that date would
24       render meaningless any delineated time period for production ...
         [N]othing in [ ] rule [26(e)(1)] imposes a never ending obligation
25       to produce documents continuously as they are created ..."
         quoting *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2008
26       WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008)[8]

27   _____
     [8] Also citing *Our Children's Earth v. Leland Stanford Junior Univ.*, 2015 WL 12964638,
28   at *3 (N.D. Cal. Oct. 29, 2015) (noting that "the duty to supplement under Rule 26(e) does
     not automatically supersede the fact discovery cutoff as to developments thereafter that

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STIKE

1  *Watson v. City of Henderson*, 2024 WL 1514983, at *7 (D. Nev. Apr. 5, 2024).

2     Accordingly, Plaintiff fails to establish that Luxottica had any inherent duty to
3  continuously produce time or pay records absent an agreement between the parties or a
4  court order. See Fed. R. Civ. P. 26(e). Plaintiff also offers no explanation as to why
5  Luxottica would have been obligated to continue supplementing information regarding
6  what even Plaintiff characterized as "class members" after class certification was denied.
7  *See* Dkt 118-1, Fahimi Decl. Ex. B, Plaintiff's Request for Informal Discover Conference
8  ("Here, Plaintiff seeks a sample of **class members'** time and payroll records and a sample
9  of **class members'** contact information.") (emphasis added).

10 **IX.   BECAUSE PLAINTIFF MISSED THE DEADLINE TO DESIGNATE AN EXPERT FOR TRIAL, SHE HAS NO WAY TO EXTRAPOLATE TIME RECORDS IN A WAY THAT IS FAIR TO LUXOTTICA.**
11

12

13    The deadline for Initial Expert Disclosures was August 29, 2025, and the deadline
14 for Rebuttal Expert Disclosures was September 15, 2025. (Dkt. 127.) Plaintiff did not
15 designate an expert for trial. This means that Plaintiff may not present expert testimony at
16 trial. Fed. R. Civ. Proc. 37(c)(1).

17    Nonetheless, Plaintiff states that she "will use the time records that were produced
18 to establish a violation rate and ask the Court to apply this to all aggrieved employees. This
19 is well supported because there is a presumption that violation rates for missing data would
20 be at least as bad as the sample data, based on the principle that employers should not
21 benefit from their own recordkeeping failures." Dkt. 128 at 6:6-11. Plaintiff provides no
22 citation for the notion of a presumption against Luxottica, and, in any event, Luxottica has
23 not failed to keep records. Any missing data is due to Plaintiff's failure to request it before
24 the discovery deadline.

25 ─────────────
26 relate to prior requests for discovery made before the cutoff" and that "endless rolling production would undermine" the just, speedy, and inexpensive determination of cases and the need of proportionate discovery); *Kuhns v. City of Allentown*, 2010 WL 4236873, at *3
27 (E.D. Pa. Oct. 26, 2010) (noting that to allow supplementation "would be to invite rolling discovery in a way that would unfairly burden [Defendant] and indefinitely postpone
28 trial").

Plaintiff also fails to explain how she will "establish a violation rate," much less extrapolate it to all alleged aggrieved employees without expert testimony. These are not issues within the common knowledge of the average juror, and moreover, it is well settled that any extrapolation must be both fair to Luxottica and preserve Luxottica's right to present its damages defenses on an individual basis. *Duran*, 59 Cal. 4th at 39-40; *see also Dukes*, 564 U.S. at 367.  Plaintiff does not address this at all. (And notably, in Plaintiff's motion for class certification, she stated adjudication of liability on a class basis would rely on common methods of proof including "expert analysis and survey results," neither of which she points to here.) Plaintiff provides no basis for establishing a violation rate at all, much less one that is in accordance with Luxottica's due process rights.

## X.   EVEN IF PLAINTIFF CAN OVERCOME ALL OF THESE HURDLES, SHE SHOULD NOT BE PERMITTED TO STACK PAGA PENALTIES.

Plaintiff argues that stacking of PAGA penalties is permitted, but she notably cites to no case where stacked penalties were actually awarded. Instead, she cites to cases that acknowledge as a theoretical possibility that stacking is permitted, such as in the context of approval of a PAGA settlement or in determining the amount in controversy for remand. In fact, the most relevant case law provides examples of the contrary—courts refusing to award PAGA penalties or dramatically reducing them, especially when, like here, Plaintiff cannot establish any intentional violations. *See, e.g., Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 529 (2018) (holding the trial court's decision to reduce PAGA penalties to $5 per initial violation based on the defendant's good faith attempts to comply with California law); *Thurman v. Bayshore Transit Mgmt.*, 203 Cal.App.4th 1112, 1135-36 (2012) (refusing to award the maximum penalty amounts when the evidence showed that defendants took their obligations seriously and attempted to comply with the law); *see Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal.5th 1056, 1074 (2024) ("As a general rule, courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions."). In the recently amended PAGA statutes, the Legislature made this discretion express, stating that courts are authorized to

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL PLAN AND MOTION TO STRIKE

1 | decline to award stacked penalties for the same purported act. *See* Cal. Lab. Code § 2699(i).

2 | Here, Plaintiff will be unable to demonstrate any unlawful company-wide policies

3 | or practices related to meal periods. Thus, even in the unlikely event she could prove a few

4 | minor technical violations, the Court should not stack penalties.

## XI. CONCLUSION

6 | Therefore, Luxottica respectfully requests that the Court issue an Order (1) striking

7 | Plaintiff's trial plan and her PAGA claim; and/or (2) limiting Plaintiff's presentation of

8 | evidence to PAGA penalties based on alleged Labor Code violations she personally

9 | suffered.

10 | Dated:  December 11, 2025

*/s/ Khatereh S. Fahimi*
Khatereh S. Fahimi
Noah J. Woods
Christopher A. Moore
LITTLER MENDELSON, P.C.
Attorneys for Defendant
LUXOTTICA OF AMERICA INC. d/b/a
LENSCRAFTERS (formerly Luxottica
Retail North America)

The undersigned, counsel of record for Defendant LUXOTTICA OF AMERICA INC. d/b/a LENSCRAFTERS, certifies that this brief contains 6,644 words, which complies with the word limit of L.R.-11.6.1

*/s/ Khatereh S. Fahimi*

Khatereh S. Fahimi